IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| TRAVIS D. WARREN, | No. 2:16-cv-1694-YY |
| Plaintiff, | OPINION AND ORDER |
| v. | |
| CHRISTOPHER J. PAROSA, et al., | |
| Defendant. | |

**MOSMAN, J.**

This matter comes before me on Defendants' Motion to Dismiss [20] Plaintiff Travis D. Warren's Fifth Claim. Mr. Warren's fifth claim alleges that Defendants failed to protect Mr. Warren from an attack by another inmate on May 1, 2016 at the Lane County Adult Correctional Facility ("the jail"). After that attack, Mr. Warren was placed in segregation until he was transferred to state custody on May 5. Mr. Warren did not exhaust this claim through the jail's grievance procedures, but argues that his failure to exhaust is excused because he was transferred only four days after the attack.

On September 18, 2017, Judge You issued her Findings & Recommendation (F&R) [52] in this case. She recommended this court deny Defendants' Motion to Dismiss for Failure to State a Claim [20], which the court converted into a Motion for Summary Judgment [24]. On September 27, Defendants filed their objections [58] along with a Motion to Supplement the

1

Motion for Summary Judgment [59] and the Affidavit of Lieutenant Steve French [60]. Mr. Warren responded [65]. Because Mr. Warren had the opportunity to respond, and did respond, to the supplemental affidavit, I GRANT Defendants' Motion to Supplement. *See United States v. Howell*, 231 F.3d 615, 621–22 (9th Cir. 2000) (court has discretion to consider newly offered evidence when reviewing F&R objections).

Defendants' objections and supplemental affidavit raise two issues the F&R does not address. This opinion addresses those issues: first, whether the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), would require Mr. Warren to exhaust his claim in the four days he was in segregation after the May 5, 2016 fight but before he was transferred, and second, whether Mr. Warren's failure to exhaust is excused even though jail policies would in fact have allowed Mr. Warren to grieve the incident after he had been transferred.

I hold that the PLRA did not require Mr. Warren to exhaust before he was transferred and that the jail's grievance procedures were no longer available to him after he was transferred. My conclusions on these issues do not alter the outcome the F&R reached; thus, with my additional analysis below, I adopt the F&R [52] as my own opinion and DENY Defendants' Motion to Dismiss [20].

## DISCUSSION

I.  **Failure to Exhaust While in Segregation**

The F&R excused the exhaustion requirement because Defendants failed to show that administrative remedies were available to Mr. Warren after he was transferred. But even if that were true, I must determine whether, as Defendants suggest, Mr. Warren's failure to grieve during the four days he was in segregation constitutes failure to exhaust this claim.

In the supplemental affidavit, Lt. French indicates—and Mr. Warren does not dispute—that inmates may access grievance procedures while in segregation. Supp. Aff. [60] at 2. Jail policy requires inmates "to file their grievance within 14 calendar days from the time they first knew of, or reasonably should have known of the aggrieved situation or act." Supp. Aff. [60] Ex. 1 at 2. If a grievance is filed late, the inmate must justify why he was unable to comply with the time limit. *Id.*

An inmate must exhaust available administrative remedies. *Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016). To properly exhaust, "prisoners must 'complete the administrative review process in accordance with the applicable procedural rules'—rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones v. Bock*, 549 U.S. 199, 218 (2007) (quoting *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Id.* But if an inmate had full opportunity and ability to file a grievance timely, but failed to do so, he has not properly exhausted his administrative remedies. *Marella v. Terhune*, 568 F.3d 1024, 1028 (9th Cir. 2009) (per curiam).

Here, assuming Mr. Warren could not file a grievance after he was transferred, he was not afforded the full opportunity to file a grievance timely—that is, the administrative remedy was not fully available to him. Jail grievance procedures give inmates fourteen days after an incident to file a grievance; Mr. Warren had only four. If the PLRA were to require him to file in the shorter window of time, then the PLRA would impose a stricter requirement than the jail's grievance procedures do. But the PLRA does not define the parameters of grievance procedures, *see Jones*, 549 U.S. at 218; thus, it cannot make the requirements of those procedures stricter.

3

Other courts have found that periods of a few days between an incident and a transfer does not allow the inmate a meaningful opportunity to exhaust. *See Alonso-Prieto v. Pierce*, No. 1:11-cv-00024-AWI-MJS (PC), 2014 WL 250342, at *4 (E.D. Cal. Jan. 22, 2014) (inmate transferred from state facility within two days of incident and not situated in federal facility until after close of ten-day window for filing grievances established by state facility did not have meaningful opportunity to exhaust); *Pauls v. Green*, 816 F. Supp. 2d 961, 968 (D. Idaho 2011) (transfer from county jail to state prison within a few days of a sexual assault did not leave an adequate opportunity to exhaust).

Thus, Mr. Warren was not required to file his grievance in the four days he was in segregation.

## II. Failure to Exhaust Post-Transfer

The F&R reasons that Mr. Warren could not grieve his claim after he was transferred because "defendants have offered no evidence that [the jail] would have accepted a grievance from an inmate transferred out of its custody or that Warren was made aware that he could file a grievance with [the jail] after his transfer." Thus, the F&R continues, "defendants have failed to meet their burden of establishing that administrative remedies were available to Mr. Warren after his transfer into state custody."

But after Judge You referred the F&R to me, Defendants submitted at least some evidence on that point. The supplemental affidavit of Steve French attaches the jail's "policy about inmate grievances" which says "inmates who have been released from the custody of the Jail are still afforded the right to request and file a grievance." Supp. Aff. [60] Ex. 1 at 3. While inmates are at the jail, they must send an Inmate Request Form to the Security Sergeants in order to get a Grievance Form. Supp. Aff. [60] Ex. 1 at 2. The policy for inmates who are no longer in

the jail's custody says "[r]equests for grievances from a released inmate will be forwarded to the Shift Supervisor," and "[t]he inmate will either be issued or mailed an Inmate Grievance Form." Supp. Aff. [59] Ex. 1 at 3.

Mr. Warren responds that he "never knew there was [sic] rules and regulations allowing transferred inmates to grieve something." Response [65] at 4. He says he did not have access to the jail policy attached as Exhibit 1, and he asserts that the inmate handbook "to the best of my memory does not say a word about transferred inmates as it pertains to the grievance process." Response [65] at 4.

Several courts in this Circuit have considered whether transfer to a different facility excuses an inmate's failure to exhaust. Where, unlike here, the inmate had adequate opportunity to grieve before he was transferred, courts find that the remedies were available. *See, e.g.*, *Miller v. Najera*, No. 1:12-CV-01288-LJO, 2017 WL 6538998, at *7 (E.D. Cal. Dec. 21, 2017); *Castrejon v. Snift*, No. EDCV 13-01254 DOC (AJW), 2017 WL 2469970, at *5 (C.D. Cal. Mar. 10, 2017). "Most courts agree that grievance procedures at a transferor facility remain available to prisoners transferred to a different prison if both prisons are administered by the same agency," since the grievance procedures are the same. *Pauls*, 816 F. Supp. 2d at 966 n.1; s*ee, e.g.*, *De La Cruz v. Graber*, No. CV 16-1294 VBF (AS), 2017 WL 4277129, at *6 n.10 (C.D. Cal. June 15, 2017) (remedies available to inmate transferred between two federal facilities);

But here, Mr. Warren did not have an adequate opportunity to grieve prior to his transfer, and he was transferred from county jail to state prison. On facts like these, district courts in the Ninth Circuit are split. Some have held that remedies are unavailable. *See Pauls*, 816 F. Supp. 2d at 968; *Alonso-Prieto*, 2014 WL 250342, at *4. Others have held that administrative remedies are available. In *Lanig v. Lane County Sheriff's Department*, No. 3:11-cv-06021-BR, 2011 WL

4704256 (D. Or. Oct. 4, 2011), a District of Oregon judge found administrative remedies available even when the inmate was transferred from county jail to state prison five days after the assault in question. *Lanig* cites three cases in support of that proposition, but all three are distinguishable. In two, the courts held that the inmate had an opportunity to exhaust prior to his transfer. *See Strickland v. Gordon*, No. CIV. 07-748-HO, 2008 WL 3285844, at *1 (D. Or. Aug. 6, 2008); *Parmer v. Idaho Corr. Corp.,* No. CV 08-46-S-BLW, 2009 WL 735646, at *4 (D. Idaho Mar. 19, 2009). In the other case *Lanig* relies on, the inmate was transferred after he had filed his case; at that point, the question of exhaustion is moot, because the PLRA requires exhaustion before the inmates files suit. *Frost v. Banks,* No. SACV 09–591–DSF (RNB), 2010 WL 1839745, at *9 (C.D. Cal. Jan. 14, 2010). Thus, I am not convinced that courts in this Circuit have reached any consensus on this question.

These facts sit between two extremes, and my analysis turns on whether this case is closer to one or the other extreme. On the one hand, a remedy is unavailable if it is "essentially 'unknowable'—so that no ordinary prisoner can make sense of what it demands . . .." *Blake*, 136 S. Ct. at 1859. For example, the Ninth Circuit held remedies unavailable where there was no evidence on the record that the jail ever told the inmate about required complaint forms, which the inmate could have obtained only upon his request. *Albino v. Baca*, 747 F.3d 1162 (9th Cir. 2014) (en banc). The jail manual described the forms, but the inmate said that he had never seen the manual (or if he did, could not read it). *Id.* at 1174–75; *see also Goebert v. Lee Cty.*, 510 F.3d 1312, 1323 (11th Cir. 2007) (cited with approval in *Blake*, 136 S. Ct. at 1859–60 ) ("Having kept Goebert in the dark about the path she was required to follow, the defendants should not benefit from her inability to find her way.").

On the other hand, the Supreme Court rejected a "reasonable mistake" exception to the exhaustion requirement. Grievance procedures "need not be sufficiently 'plain' as to preclude any reasonable mistake or debate with respect to their meaning. When an administrative procedure is susceptible of multiple reasonable interpretations, Congress has determined that the inmate should err on the side of exhaustion." *Blake*, 136 S. Ct. at 1859 (citations omitted).

On the record I have before me, I find that the grievance procedures in this case were unknowable. As Mr. Warren did know, inmates at the jail must complete an Inmate Request Form in order to receive a Grievance Form. Supp. Aff. [60] Ex. 1 at 2. But there is no evidence on the record that Mr. Warren, once transferred to state prison, had any access to the jail's Inmate Request Forms. And there is no evidence on the record to show that Mr. Warren was told that, once transferred out of the jail's custody, he could obtain a grievance form without the prerequisite Inmate Request Form. Defendants have submitted nothing to show that the procedures outlined in the French affidavit are in any inmate handbook or are otherwise habitually explained to inmates in any way. Thus, it appears there was no way that Mr. Warren—or any ordinary inmate—could know that the remedy was available to him.

## CONCLUSION

I hold that Mr. Warren's failure to exhaust his Fifth Claim is excused. Defendants' Motion to Dismiss [20] is DENIED.

DATED this __26th__ day of January, 2018,

/s/Michael W. Mosman
_____
MICHAEL W. MOSMAN
Chief United States District Judge